[Cite as *State v. Perander*, 2016-Ohio-1474.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26790 |
| | : | |
| v. | : | T.C. NO. 13CR941 |
| | : | |
| RODNEY PERANDER | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___8th___ day of _____April_____, 2016.

. . . . . . . . . . .

CHRISTINA E. MAHY, Atty, Reg. No. 0092671, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road N.E., Bloomingburg, Ohio 43106
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Rodney W. Perander, filed August 6, 2015. Perander appeals from the July 22, 2015 "Final and Appealable Decision and Entry Denying 'Petition for Post Conviction Relief' and Sustaining State's 'Motion for Summary Judgment.' " We hereby affirm the judgment of

the trial court.

{¶ 2} The facts and procedural history herein were summarized in this Court's decision on Perander's direct appeal from his conviction as follows:

Rodney Perander was found guilty by a jury in the Montgomery County Court of Common Pleas of kidnapping, with a firearm specification, and domestic violence. He was sentenced to three years on the kidnapping, with an additional three years of actual incarceration for the firearm specification, and he was sentenced to 180 days in jail for domestic violence, to be served concurrently with the sentence on the kidnapping.

* * *

The charges against Perander were based on allegations by his ex-wife and sometimes live-in girlfriend that, in the early morning hours of March 23, 2013, while in possession of a gun, Perander had prevented her from leaving their residence, threatened her physically and sexually, put the gun in her mouth, and hit her with the gun over a period of two to three hours. On April 19, 2013, Perander was indicted on kidnapping (R.C. 2905.01(A)(3)), with a firearm specification, and domestic violence (R.C. 2919.25(A)). While the charges were pending, Perander filed a motion to suppress some of the statements he made to the police. The trial court held a hearing on the motion, and it granted part of Perander's motion to suppress, finding that some of his statements had been made when an officer asked additional questions after Perander had invoked his right to counsel. In other respects, the motion to suppress was overruled. The

matter went to trial by a jury in March 2014; Perander was convicted and sentenced as described above.

*State v. Perander*, 2d Dist. Montgomery No. 26182, 2015-Ohio-1752, ¶ 1, 3.

**{¶ 3}** We note that the record reflects that Perander repeatedly professed his innocence at trial and asserted that the victim, Tori Neal, was untruthful in accusing him. We note the following exchanges in the course of Perander's direct testimony:

Q. Did you ever physically assault Tori Neal?

A. No.

Q. Did you ever hold her at gunpoint?

A. No.

Q. Did you ever command her to do things to herself or do things to you?

A. No.

* * *

Q. Did you ever stick the gun in Tori's mouth?

A. No.

* * *

Q. Rodney, you heard Tori testify?

A. Yes.

Q. And you heard her explanation on what happened on that morning of March 23, 2013?

A. Yes.

Q. And it was a pretty graphic explanation?

A. Yes.

Q. These allegations that Tori made against you, are any of them true?

A. No.

**{¶ 4}** We further note that the following exchange occurred in the course of Perander's cross-examination:

Q. And if I understand what you're telling the Court today, this morning, please correct me if I'm wrong, but you're saying that this is all a big conspiracy by Tori. Would that be accurate?

A. I would say she's trying to set me up. That would be accurate, yes.

**{¶ 5}** Perander filed his petition on March 16, 2015, asserting that he received ineffective assistance of counsel. Perander asserted in part as follows:

As Defendant's medical records extensively and exhaustively show, the Defendant, an Iraq War veteran, who suffered severe trauma in combat and was diagnosed with PTSD displayed severe anger and impulse control issues as a result of his service. PTSD is a recognized psychiatric disorder. This psychiatric condition impelled him to dangerous behavior, hyper-vigilance, and sleeplessness for days on end. He was given a cocktail of medications scattered extensively through his medical history that he took in various combinations and which had little to no effect, especially on his sleeping disorder. The Defendant suffered from chronic and acute anger and irritability as a result of this medical condition.

Further, Defendant was in constant pain from a parachuting accident in the military which caused blood in his urine and for which he also took a medley of drugs. * * *

And finally, Defendant suffered a traumatic brain injury in a motorcycle accident in 2007. Since then, as the VA documents show, he has suffered from dizziness, blackouts and memory loss. His family attests to all of this. Dr. Chandra also includes this accident as something that could have a continuing effect on the Defendant's anger control that began after his military service.

Due to his medical and psychiatric conditions, and his use of multiple medications, the Defendant had a defense to the charges herein. While Defendant stated at his trial that nothing happened the night of the incident with his ex-wife, the Defendant has memory lapses. He has blackouts. Therefore, could he really aid in his defense? Could he form the requisite mens rea for these offenses?

Further, since impulse control and extreme anger, plus Defendant's " . . . insight and judgment were both deemed as limited to fair" * * *, all of this resulting from military service and diagnosis of PTSD, and, as a possible effect of his brain injury, again, could the Defendant understand the seriousness of his actions and did he have the ability to control them? (sic) Could the Defendant form the requisite mens rea?

These were viable defenses and although Trial Counsel was aware of the fact that the Defendant had a military-related psychiatric condition

and a traumatic brain injury, these matters were not pursued. Certainly the failure to explore these matters falls below any objective standard of reasonable representation. Defendant was prejudiced by not having all viable defenses available to him not only at the trial, but for sentencing.[1]

{¶ 6} Attached to Perander's petition is an affidavit from his mother, Paula Goodrich, which provides: "I physically received my son's medical files from the VA in a sealed envelope and transported them in their sealed envelope to [Perander's] attorney * * *." Also attached is correspondence from Perander's aunt, Cecile Davis, which provides that Perander has been diagnosed with PTSD and was in a motorcycle accident "which caused severe head trauma." According to Davis, while Perander attended a graduation party for her grandson, he "stood up behind my back with his arms crossed like he was on guard. You could tell he was very uncomfortable being there, he never talked to anyone, he just stayed by me and his mother." An affidavit and correspondence from Perander's son, Dylan Perander, are also attached. The affidavit provides in part: "I saw the cabinets in his house being broken by a falling lamp and I saw my father break the door jamb getting some files. These things occurred about 2 weeks prior to the arrest

---

[1]To the extent that Perander may have suggested in his petition that the trial court failed to consider his medical history at sentencing, we note that Perander's presentence investigation report provides, in a section entitled "Physical/Mental Health," as follows: "Mr. Perander reported suffering from constant pain in his back, left knee, and right shoulder which stems from an injury while active duty Army. In 2007, Mr. Perander was hospitalized after he suffered a brain aneurism following a motorcycle accident. He reported no past or present suicidal ideation or homicidal ideations or attempts. He reported being diagnosed with Post Traumatic Stress Disorder (PTSD) at the VA Medical Center in May 2012. Mr. Perander reported he has been in treatment since 2012; however, has opted not to be treated with medication. While under supervision of EHDP, Mr. Perander provided verification of his treatment. * * *."

for (sic) Tori, the lawyer for my father was aware of this but did not call me or contact me." The affidavit further provides that Dylan "spoke to Tori on Friday before my father was arrested and she said she was leaving and had it all planned out." The correspondence provides that Perander has problems with his memory. Finally, Perander's extensive VA medical records are attached to the petition.

{¶ 7} In its motion for summary judgment, the State asserted that defense counsel "was not ineffective because the Defendant's current claim of insanity is contrary to the Defendant's assertion he was not guilty of the offense at trial." The State further asserted that Perander "also asserted the victim was not a credible witness." According to the State, "based upon the affirmative defense standard for prevailing on a not guilty by reason of insanity claim, the defense at trial is in direct contrast to the current argument: that the Defendant was guilty of each and every allegation made by the State, but he lacked the capacity to understand or control his conduct." The State argued that since "the affirmative defense of not guilty by reason of insanity is in direct contradiction to the defense strategy chosen at trial, the Defendant cannot prevail on an assertion that trial counsel was ineffective on this basis. The decision to pursue a defense of actual innocence was a debatable issue concerning trial strategy."

{¶ 8} The State further asserted that there "is no actual evidence to support the Defendant's claims that counsel was ineffective for not pursuing an insanity defense." The State argued that this Court "has found that evidence of a mental health disorder through a lay witness can be insufficient to establish an insanity defense." According to the State, "Ohio courts have also found that counsel is not ineffective for not establishing an insanity defense when there is only evidence of a mental health disorder." The State

argued that Perander "provided irrelevant materials and insufficient evidence to support allegations that he suffers from a mental disease or defect that would sufficiently support an insanity defense." The State asserted that the trial court should grant summary judgment in its favor "because there are no genuine issues of material fact, and no constitutional issues remain." The State argued that defense counsel's representation of Perander was effective prior to and in the course of trial, and that Perander cannot demonstrate he was prejudiced by his counsel's representation.

{¶ 9} In ruling in favor of the State, the trial court noted that it considered Perander's petition and "his attached affidavits and documents, the indictment, the journalized records and entries, and the court reporter's transcript." The court determined that Perander "failed to fulfill his initial burden of submitting evidentiary documents containing sufficient operative facts to demonstrate his claim and merit a hearing." The court noted that it "does not agree that the inability of a defendant to understand the seriousness of his actions and the inability to control them is a 'viable defense.'" Further, the court determined that "the inability of a defendant to form the requisite mens rea is not a 'viable defense.'" The court noted that in the absence of a meaningful insanity defense, evidence of mental deficiencies falling short of insanity is inadmissible. The court determined that Perander's "post-trial assertion that he was legally insane or was unable to form the necessary mens rea when he committed the indicted offenses of kidnapping and domestic violence is inconsistent with – and entirely undermined by – his own sworn testimony at trial." It was significant to the court that "Perander repeatedly, adamantly, and unambiguously denied committing the indicted offenses. He even offered elaborate exculpatory explanations for how certain property

was damaged and also gave an innocent explanation of a seemingly incriminating statement he made to the victim after the incident." It was further significant to the court that "Perander does not offer an affidavit of a qualified medical expert rendering an opinion that at the time of the commission of the offenses, Perander did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts." The court concluded that "Perander has not set forth sufficient operative facts to establish substantive grounds for relief," and that the State's "right to summary judgment does appear on the face of the record."

{¶ 10} Perander asserts one assigned error as follows:

THE COURT ERRED IN FAILING TO GRANT AN EVIDENTIARY HEARING ON APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.

{¶ 11} The bulk of the argument section in Perander's brief is a verbatim repetition of his petition for postconviction relief. Perander concludes that "to look at Perander's trial *post hoc* is to pervert the analysis. The point is that an insanity defense was not offered due to the ineffective assistance of counsel. Perander testified because of the ineffectiveness of counsel." Perander asserts that "these matters occurred *before* trial. It is precisely because of the mistakes of counsel that the Trial Court is in a position to do the inaccurate analysis it does."

{¶ 12} The State responds that "Perander is incorrect; his petition for post-conviction relief failed to submit evidence containing sufficient operative facts to demonstrate a lack of competent counsel, and that he was prejudiced by counsel's ineffectiveness." The State argues that "Perander's proffered defenses are not viable

defenses, and the documents he attached as support of his claim of mental illness were insufficient." According to the State, "[n]or can Perander demonstrate that he was prejudiced by his counsel's performance; at trial the defense made the strategic decision to argue total innocence, and counsel pursued that strategy aggressively." The State notes that while Perander's medical records contain "multiple diagnoses and impressions of PTSD, there are no express opinions or documentation stating that Perander's diagnosis of PTSD affects his ability to appreciate the wrongfulness of his conduct or to conform his conduct in accordance with the law." According to the State, the "affidavits and records attached to Perander's Petition for Post-Conviction Relief fail to establish, or indeed, even to address, the question of whether his potential mental health disorders caused or contributed in any way to Perander being unable to appreciate the wrongfulness of his conduct at the time of the crime." The State argues that "a strategic choice was made to pursue a defense of actual innocence," and that "defenses of actual innocence and NGRI are in contradiction to one another, and Perander could not have pursued both at trial."

{¶ 13} "Postconviction relief proceedings are not direct appeals of the criminal conviction; instead they function as a collateral, civil attack on the judgment.* * *." *State v. Perkins*, 2d Dist. Montgomery No. 24397, 2011-Ohio-5070, ¶ 9. R.C. 2953.21 governs petitions for postconviction relief and provides in relevant part as follows:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition

in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a).

{¶ 14} Pursuant to R.C. 2953.21(C):

* * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.

{¶ 15} As this Court has previously noted:

Under R.C. 2953.21, "a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing." *State v. Calhoun*, 86 Ohio St.3d 279, 282, 1999-Ohio-102, citing *State v. Cole* (1982), 2 Ohio St.3d 112. First, the trial court must determine whether there are substantive grounds for relief, i.e., "whether there are grounds to believe that 'there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.' " *Id.* at 283,

quoting R.C. 2953.21(A)(1). * * *

The post-conviction relief statute imposes on a petitioner "the initial burden to submit evidentiary documents containing operative facts sufficient to demonstrate substantive grounds for relief that merit a hearing." *State v. Gapen*, Montgomery App. No. 20454, 2005-Ohio-441, ¶ 21. "Broad conclusory allegations are insufficient, as a matter of law, to require a hearing." *Id.* Additionally, where the allegations in an affidavit, even if true, do not demonstrate a constitutional violation, no hearing is required. *Calhoun*, 86 Ohio St.3d at 284. To obtain a hearing, a defendant must demonstrate prejudicial error. *Id.* at 283.

*State v. Lenoir*, 2d Dist. Montgomery No. 22893, 2009-Ohio-1275, ¶10-11.

**{¶ 16}** As this Court has previously noted:

" '[I]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.' " *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983), quoting *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980).

*State v. Eicholtz*, 2d Dist. Clark No. 13-CA-100, 2014-Ohio-3837, ¶ 16.

**{¶ 17}** R.C. 2945.391 provides: "[A] person is 'not guilty by reason of insanity' relative to a charge of an offense only as described in division (A)(14) of section 2901.01 of the Revised Code. Proof that a person's reason, at the time of the commission of an

offense, was so impaired that the person did not have the ability to refrain from doing the person's act or acts, does not constitute a defense." R.C. 2901.01(A)(14) provides: "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." "If a defendant cannot present a meaningful insanity defense, testimony regarding any mental deficiencies that fall short of insanity is not admissible. (citation omitted)." *State v. Tobias*, 2d Dist. Montgomery No. 17975, 2000 WL 1299535, * 7 (Sept. 15, 2000). In *State v. Twyman*, 2d Dist. Montgomery No. 19086, 2002 WL 1483576 (July 12, 2002), this Court determined that defense counsel was not ineffective in failing to pursue an insanity defense where the defendant's "treating physician stated in a letter to the court that Twyman suffers from a mental health disorder" but did not "express an opinion whether Twyman could have known that his conduct in resisting arrest was wrongful." *Id., * 6.*

{¶ 18} We review the denial of Perander's petition for an abuse of discretion. *State v. Mackey*, 2d Dist. Clark No. 2014-CA-68, 2015-Ohio-899, ¶ 11. As this Court has noted:

> "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." (Citations omitted.) [*State v. Darmand*, 135 Ohio St.3d 343, 2013-Ohio-966,

986 N.E.2d 971] at ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

*State v. Heisey*, 2d Dist. Miami No. 2014-CA-34, 2015-Ohio-4610, ¶ 23.

{¶ 19} As noted above, Perander was not automatically entitled to a hearing on his petition. Contrary to Perander's assertions, his petition does not demonstrate that he had a defense to the charges against him based on legal insanity. As the trial court noted, Perander's post-trial assertions regarding a defense of insanity are undermined by his sworn testimony at trial. Further, we agree with the State and the trial court that the letters and affidavits of Davis and Perander's son, and Perander's medical records, are insufficient to support Perander's claim of legal insanity such that he was entitled to a hearing on his petition. The affidavits of Davis and Perander's son merely present broad conclusory allegations which are insufficient as a matter of law to merit a hearing. As the State further asserts, while Perander's medical records contain multiple diagnoses of PTSD, there are no express opinions or documentation in the record establishing that Perander's PTSD diagnosis amounted to a severe mental disease or defect that affected s ability to appreciate the wrongfulness of his conduct. In other words, Perander failed to present actual evidence to support his claim that counsel was ineffective and that he was prejudiced. Since Perander failed to demonstrate prejudicial error, we conclude that the trial court did not abuse its discretion in denying Perander's petition for postconviction relief without a hearing.

{¶ 20} Perander's assigned error is overruled, and the judgment of the trial court

is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Christina E. Mahy
George A. Katchmer
Hon. Dennis J. Langer