[Cite as *State v. Newberry*, 2025-Ohio-2004.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                      :

    Plaintiff-Appellee,        :

                                   No. 113844

    v.                          :

RONALD NEWBERRY,                    :

    Defendant-Appellant.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 5, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-642539-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellee.*

Gabrielle M. Ploplis, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Ronald Newberry ("Newberry") appeals the trial court's journal entry denying his petition to vacate or set aside his convictions ("petition for postconviction relief," "postconviction-relief petition," or "petition") for aggravated murder, murder, kidnapping, aggravated burglary, aggravated arson, felonious

assault, and having weapons while under disability. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} On March 16, 2022, a jury convicted Newberry, and on March 24, 2022, the court sentenced him to an aggregate sentence of 63 years to life in prison. Newberry appealed his jury trial convictions, all of which this court affirmed. *State v. Newberry*, 2023-Ohio-3623 (8th Dist.) ("*Newberry I*"). As articulated in *Newberry I*, the facts determined at trial are as follows.

{¶ 3} On October 10, 2018, Newberry and two codefendants — Kodii Gibson ("Gibson") and DeMarcus Sheeley ("Sheeley") — participated in a crime spree that culminated in the murders of Paul Bradley ("Paul") and Paul's minor daughter, P.B. Newberry, Gibson, and Sheeley broke into Paul's house in Bedford and kept Paul and P.B. detained there between 3 a.m. and 6 a.m., while they ransacked the house and stole items of value. They then drove Paul and P.B. — in a silver Buick LaCrosse that Paul was renting — to an abandoned house on Wadena Avenue in East Cleveland and held them there for over two hours. Meanwhile, Gibson called his girlfriend to bring him a gasoline can, which she did. Gibson walked with Sheeley to a nearby gas station to fill the can. Shortly after 9 a.m., Paul and P.B. were driven — again in Paul's car — to a vacant lot on Savannah Avenue in East Cleveland. There, P.B. was shot to death and Paul was beaten and burned alive. Newberry, Gibson, and Sheeley also used Newberry's car — which had been recently purchased in Newberry's mother's name — throughout these events. Newberry's car

was captured in surveillance footage traveling with Paul's car throughout October 10, 2018. Newberry returned the car to the dealership, attempting to eliminate evidence and conceal his involvement in the crime. When investigators questioned Newberry about his involvement, he and his mother created a fake person — "Jamaican Shawn" — to hide Newberry's participation in the murders. Newberry turned himself in to police on November 9, 2018. *Newberry I.*

{¶ 4} In his direct appeal, Newberry raised 12 assignments of error, including that his trial counsel was ineffective and had a disqualifying conflict of interest, and that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. This court overruled all of Newberry's arguments and affirmed his convictions in *Newberry I.* The Ohio Supreme Court denied jurisdiction. *State v. Newberry*, 2024-Ohio-335.

{¶ 5} On June 23, 2023, Newberry filed a petition for postconviction relief under R.C. 2953.21. In his petition, Newberry argued that his trial counsel was ineffective due to a conflict of interest, having previously represented East Cleveland Police Department Officer Joseph Marche ("Officer Marche"), who investigated Paul's and P.B.'s homicides. Newberry also argued counsel was ineffective for failing to impeach Officer Marche and Detective Kenneth Lundy ("Det. Lundy") regarding their Ohio Peace Officer Training Academy ("OPOTA") training histories. Finally, Newberry argued the State failed to disclose, during pretrial discovery, Det. Lundy's testimony concerning his OPOTA training history in a separate, unrelated criminal

case. Newberry posits that Det. Lundy's testimony would have been favorable to his defense under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

{¶ 6} The trial court denied Newberry's petition for postconviction relief. From this entry, Newberry appeals, setting forth the following assignments of error:

1. The trial court erred in failing to hold an evidentiary hearing on appellant's postconviction petition.

2. The trial court erred in denying Appellant's postconviction petition.

3. The trial court erred in finding that Appellant's claims were barred by Res Judicata.

4. The trial court erred in finding that representation of Commander Marche by Appellant's trial counsel did not amount to an actual conflict.

5. The trial court erred in finding that the impeachment of Marche would have been improper.

6. The trial court erred in finding that Appellant failed to establish that he did not satisfy the *Strickland* ineffectiveness standard.

7. The trial court erred in finding that Appellant failed to demonstrate a *Brady/Giglio* violation.

8. The trial court erred in providing that Appellant did not meet the *Brady* standard because the information was publicly available.

9. The trial court erred in considering admissibility in assessing Appellant's *Brady/Giglio* claim.

## II. Law and Analysis

### A. Assignments of Error Nos. 1 and 2: Denial of Postconviction Relief and Hearing

{¶ 7} In assignments of error Nos. 1 and 2, Newberry asserts the trial court improperly denied his petition for postconviction relief without holding a hearing. For convenience, we will address these assignments of error together. Newberry

supports assignments of error Nos. 1 and 2 by incorporating arguments raised in assignments of error Nos. 3-9. In assignment of error No. 3, Newberry asserts the trial court erred in its application of res judicata to several of Newberry's bases for postconviction relief. Assignments of error Nos. 4-6 address Newberry's claim that he was deprived of his Sixth Amendment right to effective assistance of counsel. Assignments of error Nos. 7-9 address Newberry's claim the State withheld evidence favorable to his defense, violating *Brady* and his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution.

{¶ 8} A petition for postconviction relief is a collateral civil attack on a criminal conviction. *State v. Fields*, 2023-Ohio-4543, ¶ 10 (8th Dist.). A postconviction petition "present[s] constitutional issues to the court that would otherwise be impossible to review because the evidence supporting the issues is not contained in the record of the petitioner's criminal conviction." *Id.*

{¶ 9} A petition that raises claims barred by res judicata may be dismissed. *Fields* at ¶ 12. On this issue, the Ohio Supreme Court has explained:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgement, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. *See also State v. Jordan*, 2021-Ohio-701, ¶ 9 (8th Dist.) ("[A] petition for post-conviction

relief is not the proper vehicle to raise issues that were or could have been determined on direct appeal.").

{¶ 10} Applying *Perry*, this court stated, "[I]ssues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record." (Internal citations omitted.) *Fields* at ¶ 13. A postconviction-relief petition must include evidence that "meet[s] some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *Id.* "Cogent" postconviction evidence is "competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial." *Id.*

{¶ 11} Petitioners seeking postconviction relief are not automatically entitled to a hearing. "Where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate the petitioner set forth sufficient operative facts to establish substantive grounds for relief, the court may dismiss a petition for postconviction relief without a hearing." *State v. Hostacky*, 2016-Ohio-397, ¶ 4 (8th Dist.).

{¶ 12} We review a trial court's decision to grant or deny a petition for postconviction relief for an abuse of discretion, which "occurs when a court exercises its judgment, in an unwarranted way, in regard to a matter over which it has

discretionary authority." *Fields*, 2023-Ohio-4543, at ¶ 11, citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

### 1. Trial Counsel's Prior Representation of Officer Marche

{¶ 13} Newberry asserts that the court abused its discretion in denying his petition without hearing regarding his claim that his trial attorney rendered ineffective assistance of counsel. The first basis Newberry's petition provided for an ineffective-assistance-of-counsel claim is that Newberry's attorney represented Officer Marche, who investigated these homicides, in prior civil matters (Cuyahoga C.P. Nos. SD-18-0077857 and SD-18-077858, or "OPOTA training cases"). In these cases, private citizen Mariah Crenshaw ("Crenshaw") sued the East Cleveland Police Department alleging, among other things, that certain officers failed to complete Ohio Peace Officer Training Academy ("OPOTA") courses. Per Newberry, his attorney's prior representation of Officer Marche in the OPOTA training cases created a conflict of interest.

{¶ 14} Before trial, counsel disclosed that he represented Officer Marche and other officers "in a civil matter where . . . a citizen[] had brought an action again[st] East Cleveland's police department for not being accredited . . ., not having their continuing education, things like that." Immediately after, the court asked, "Mr. Newberry, is that okay with you? After all that's been disclosed, are you okay?" Newberry replied, "Yes."

{¶ 15} Newberry argues that his pretrial, on-the-record consent to representation was uninformed because trial counsel did "not accurately" explain the "depth of his representation" of Officer Marche prior to trial.

{¶ 16} Denying his petition for postconviction relief, the trial court stated, "To the extent the defendant alleges there was a conflict of interest arising out of trial counsel's prior representation of Officer Joseph Marche of East Cleveland, this is an issue he was aware of at the time of trial and raised on direct appeal utilizing the trial transcript." The court then found res judicata barred Newberry's assertions that trial counsel was conflicted. We agree.

{¶ 17} This court addressed trial counsel's alleged conflict of interest in *Newberry I*, in which appellant argued "that one of his defense counsel had a conflict of interest based on counsel's former representation of Marche and other East Cleveland law-enforcement officers." *Newberry I* at ¶ 196. This court found:

> The nature of defense counsel's former representation of one of the state witnesses was fully disclosed, defense counsel stated that the former representation presented no conflict of interest and the trial court asked Newberry if he was comfortable proceeding to trial with that counsel. Newberry said that he was.
>
> Newberry has not shown that this consent was anything but informed and voluntary. Further, he has not shown that counsel's former representation presented an actual conflict of interest or that counsel's performance was adversely affected by the previous representation.

*Id*. at ¶ 199-200.

{¶ 18} Newberry's postconviction-relief petition included no new evidence to support his assertion that trial counsel's attorney-client relationship with Officer Marche was more extensive than described to him at trial, such that Newberry did

not provide informed consent to counsel's representation. Newberry supplemented his petition for postconviction relief with four exhibits concerning the scope of counsel's prior representation of Officer Marche: a hearing transcript from the OPOTA training cases, his own affidavit, and two dockets from the OPOTA training cases.

{¶ 19} Counsel's statements in the OPOTA case-hearing transcript are consistent with what he told the court and Newberry before his criminal trial. During the OPOTA hearing, counsel stated that he "made an appearance to represent [the officers] individually should they need it. They have competent counsel so far, and I don't see a reason to change that." Trial counsel also stated that he had moved to dismiss the case "jointly with East Cleveland's motion. We share a common position." Lastly, during the OPOTA hearing, counsel informed the court that plaintiff had contacted prosecutors to request that Officer Marche be criminally charged, but that he never was. The hearing transcript does not show that counsel's prior representation of Officer Marche was broader than he disclosed to Newberry before his criminal trial.

{¶ 20} Newberry's affidavit, too, does not demonstrate that trial counsel inaccurately described his representation of Officer Marche. Newberry attested, "No one explained to me what [trial counsel] represented for Detective Marche about . . . ." The record of Newberry's criminal trial does not support this assertion. The trial transcript shows Newberry's attorney accurately described to him before trial what issues were litigated in the OPOTA training case.

{¶ 21} Lastly, the dockets for the OPOTA training cases do not demonstrate that counsel's representation of Officer Marche was more extensive than had been explained to Newberry. The dockets do show, as Newberry notes, that counsel withdrew his civil representation of Officer Marche two months before Newberry's trial and ten months after he began representing Newberry. However, having determined that counsel disclosed his previous representation of Officer Marche and accurately described the issues involved, we find the precise timing of counsel's withdrawal is insufficient to compromise Newberry's consent.

{¶ 22} Newberry's postconviction-relief petition includes no new evidence that a conflict of interest existed or that trial counsel misrepresented to Newberry his prior attorney-client relationship with Officer Marche. Moreover, Newberry's appeal raised the issue of counsel's prior representation and the conflict of interest it supposedly created. Therefore, the trial court did not abuse its discretion by denying without hearing — on the basis of res judicata — Newberry's postconviction-relief claim that trial counsel was conflicted and, therefore, ineffective. Having addressed trial counsel's alleged conflict of interest, we overrule assignment of error No. 4.

## 2. Failure to Cross-Examine Officer Marche

{¶ 23} Newberry also argues he is entitled to postconviction relief because he was denied effective assistance of counsel when his trial lawyer did not impeach Officer Marche about his noncompliance with OPOTA training requirements. Officer Marche did not testify at trial. Newberry claims his lawyer should have called

Officer Marche as a witness to attack his competence as an investigator by cross-examining him about his failure to complete required trainings.

{¶ 24} Newberry supplemented his petition for postconviction relief with three exhibits related to Officer Marche's training history: an audit of East Cleveland police officers' compliance with OPOTA requirements ("Compliance Audit"), an email from an OPOTA employee to Officer Marche regarding an incomplete training course ("OPOTA Email"), and a record of training courses Officer Marche completed ("eOPOTA Transcript").

{¶ 25} The Compliance Audit lists Officer Marche among East Cleveland Police Department officers who should have been in "cease function" status (i.e. should have ceased functioning as a peace officer) for failing to complete required OPOTA trainings between 2015 and September 17, 2018. Per the audit, Officer Marche should have been in cease function from January 1, 2016, through October 4, 2016, and again from January 1, 2018, through August 16, 2018.

{¶ 26} The OPOTA Email states that, in 2018, Officer Marche was "required to complete" a "Refresher Course" on "Human Trafficking." The email gave Officer Marche until December 31, 2018, to complete the required course or be placed in cease-function status. Officer Marche's eOPOTA Transcript does not list the human-trafficking course complete as of May 5, 2021.

{¶ 27} The trial court found that res judicata barred Newberry's claim, raised in his postconviction-relief petition, that trial counsel rendered ineffective assistance by not calling Officer Marche to cross-examine him about his training

history. We agree. Newberry's exhibits do not establish facts unknown to him during his appeal that are essential to this ineffective-assistance-of-counsel claim. Newberry had reason to know about Marche's training noncompliance when he appealed his conviction. Before trial, Newberry's lawyer informed him that Officer Marche was alleged in a previous case to have not completed "continuing education" requirements. The only additional facts the Compliance Audit, Refresher Course Email, and eOPOTA Transcript provide are the dates on which Marche was allegedly noncompliant with training requirements and what course he purportedly failed to take. That Newberry may not have known these details during direct appeal did not prevent him from asserting that his lawyer provided ineffective trial counsel by failing to call Marche as a witness and cross-examine him about past training noncompliance. Newberry's prior failure to raise this issue bars him from doing so now.

{¶ 28} Further, Newberry's exhibits do not set forth sufficient facts to establish trial counsel was ineffective for failing to impeach Officer Marche, meriting postconviction relief or a hearing. To establish ineffective assistance of counsel, a defendant must show his attorney was deficient — made errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment – and that these errors prejudiced the defense — deprived defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Officer Marche's periods of OPOTA noncompliance predate his investigation, beginning in October 2018, of the homicides for which Newberry was convicted. Newberry also submitted no evidence

that Officer Marche's alleged failure to timely complete a human trafficking training impacted the investigation of these homicides. The trial court did not abuse its discretion in denying without hearing — based on res judicata — Newberry's postconviction-relief claim that trial counsel was ineffective for not calling and cross-examining Officer Marche. Accordingly, we overrule assignment of error No. 5.

### 3. Cross-Examination of Det. Lundy

{¶ 29} Newberry also argues "trial counsel's failure to impeach Detective Kenneth Lundy with his OPOTA records" constituted ineffective assistance of counsel, entitling him to postconviction relief. Det. Lundy testified for the State in Newberry's trial. Newberry argues that trial counsel failed "to utilize any information he obtained pursuant to his representation of Officer Marche to impeach Detective Lundy's credibility."

{¶ 30} To support this claim, Newberry's petition includes a transcript from an unrelated criminal case ("Unrelated Criminal Case Transcript") in which Det. Lundy testified. The Unrelated Criminal Case Transcript reveals that Det. Lundy admitted on cross-examination that he "would skim through" some OPOTA courses, taking just a few minutes to complete them. Det. Lundy also admitted that he received low scores on certain training tests.

{¶ 31} The trial court found res judicata barred this claim. We agree. As stated above, Newberry's lawyer informed him prior to trial that he had represented Officer Marche in the OPOTA training case. He also informed Newberry that the

OPOTA case was "an action again[st] East Cleveland's police department," i.e. Det. Lundy's employer. Newberry also knew that Det. Lundy helped investigate these homicides for the East Cleveland Police Department; Det. Lundy testified to this during Newberry's trial. Further, the OPOTA training case resolved before Newberry's trial, as did the unrelated criminal case in which Det. Lundy was cross-examined about his conduct during OPOTA training. Thus, Newberry could have argued on appeal, as he does here, that his lawyer should have attacked Det. Lundy's credibility using information he supposedly learned while representing Officer Marche in the prior OPOTA training case. Res judicata prevents Newberry from raising the issue in his postconviction-relief petition. Accordingly, we overrule assignment of error No. 6. Having found no error in the court's application of res judicata to any of Newberry's above claims, we also overrule assignment of error No. 3.

#### 4. *Brady* violation

{¶ 32} Newberry lastly alleges the State violated *Brady*, 373 U.S. 83, by failing to provide him the Unrelated Criminal Case Transcript during discovery. Newberry's petition supported his *Brady* claim with one exhibit: a motion Crenshaw filed in another civil case, Cuyahoga C.P. No. SD-21-078177. In that case, Crenshaw sued to remove Cuyahoga County Prosecutor Michael O'Malley from office for failing to criminally prosecute supposed police misconduct alleged in part in the OPOTA training cases. Crenshaw attached to this motion a copy of Det. Lundy's testimony in the unrelated criminal case, which was served on at least one

prosecutor. Newberry argues this exhibit demonstrates the State had control of the transcript. Newberry also posits the transcript was favorable to his defense because he could have used it to impeach Det. Lundy's credibility. Per Newberry, this obligated the State to provide him the transcript, which it never did.

{¶ 33} Per *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To establish a *Brady* violation, "the defendant must demonstrate that (1) favorable evidence, either exculpatory or impeaching; (2) was willfully or inadvertently withheld by the state; and (3) the defendant was prejudiced thereby." *State v. Buehner*, 2021-Ohio-4435, ¶ 38 (8th Dist.), citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

{¶ 34} "Whether a *Brady* violation is material is a question of law subject to de novo review." *Buehner* at ¶ 43. "Under a de novo standard of review, we give no deference to a trial court's decision." *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212, ¶ 9 (8th Dist.), citing *Akron v. Frazier*, 142 Ohio App.3d 718, 721 (9th Dist. 2001).

{¶ 35} Newberry did not demonstrate that the State withheld *Brady* material. "'*Brady* does not apply to materials that are not wholly within the control of the prosecution.'" *Jordan*, 2021-Ohio-701, at ¶ 38 (8th Dist.), citing *State v. Jordan*, 2018-Ohio-4108 ¶ 47 (8th Dist.). In *Jordan*, this court denied a postconviction-relief petition alleging the State violated *Brady* by not disclosing

photo exhibits from a previous trial. This court reasoned that the exhibits were "not . . . wholly within the state's control because they were part of the public record in [the] criminal trial . . . ." As in *Jordan*, the criminal case transcript in which Det. Lundy testified about his OPOTA training was part of the record of that trial. It was therefore not wholly within the control of the prosecution. For this reason, the State did not violate *Brady* by not disclosing the transcript to Newberry.

{¶ 36} Newberry also failed to establish that not having Det. Lundy's testimony prejudiced his defense. As set forth in *Newberry I*, overwhelming evidence supported Newberry's conviction. This evidence includes surveillance footage, cell-phone records, DNA evidence, and Newberry's own lies to police and attempts to eliminate evidence in the weeks following the homicides. *Newberry I* at ¶ 219-224.

{¶ 37} Moreover, Newberry's trial counsel cross-examined Det. Lundy about a variety of topics related to Det. Lundy's investigation of this case. These topics included that Newberry had turned himself in, that Det. Lundy had previously misidentified Newberry on surveillance footage, and the limits of Det. Lundy's ability to assess Newberry's movements and locations on the night Paul and P.B. were murdered. Because Newberry has not established the State's failure to turn over Det. Lundy's testimony prejudiced his defense in violation of *Brady*, the trial court did not abuse its discretion in denying without hearing Newberry's postconviction-relief petition regarding his *Brady* claim. Accordingly, we overrule assignments of error Nos. 7-9.

{¶ 38} Assignments of error Nos. 1 and 2 incorporate assignments of error Nos. 3-9, which we overruled above. Accordingly, we also overrule assignments of error Nos. 1 and 2 and find the trial court did not abuse its discretion in denying Newberry's petition without hearing.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
DEENA R. CALABRESE, J., CONCUR