THE STATE OF OHIO, APPELLEE, *v.* ARMSTRONG, APPELLANT.

(No. 54391—Decided October 11, 1988.)

*John T. Corrigan,* prosecuting attorney, and *Laurence R. Snyder,* for appellee.

*Ronald Armstrong, pro se.*

ANN MCMANAMON, J. As part of a plea bargain in which charges of kidnapping, rape and intimidation were dismissed, petitioner Ronald Armstrong pled guilty to aggravated assault and felonious assault in August 1984. The trial judge suspended consecutive sentences and placed Armstrong on three years' probation, referring him to the probation department alcohol-dependency unit for treatment.

Some three months later Armstrong was arrested on a probation violation charge and was returned to the sentencing judge. Armstrong waived a probable cause hearing and, upon his admission of the violation, the court terminated probation and ordered the sentence, modified to concurrent terms, into execution. Armstrong did not appeal this order and instead, two and one-half years later, sought to challenge it by means of a civil action for postconviction relief. Armstrong claims he was denied due process of law and effective assistance of counsel at his probation revocation. The court denied his petition without a hearing and filed findings of fact and conclusions of law pursuant to R.C. 2953.21(G).

Our threshold determination is whether the remedy of postconviction relief is available to contest probation revocation proceedings. We hold it is not.

R.C. 2953.21(A) grants a postconviction remedy to "[a]ny person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable" under the Ohio or United States Constitutions. In this context the term "judgment" clearly refers to a criminal conviction or delinquency adjudication. Patently, irregularities in the revocation of probation do not render the original conviction void or voidable.

Moreover, R.C. 2953.21 does not authorize the relief requested by the petitioner. If a trial court finds merit in a petition, the court "shall enter a judgment that vacates and sets aside the judgment in question, and * * * shall discharge or resentence him or grant a new trial as may appear appropriate." R.C. 2953.21(G). We do not construe these remedies to include an order granting a new revocation hearing.

We note that this court has, on occasion, reviewed similar denials of postconviction relief from probation revocation proceedings, but without addressing the issue of the availability

of the remedy. Since we have never passed upon this question, we consider this review to be of first impression in this district. However, at least one other appellate court shares our view on this issue. See *State* v. *Custer* (Feb. 8, 1983), Darke App. No. 1070, unreported.

While our holding is dispositive of this appeal, we shall address Armstrong's three assignments of error[1] as required by App. R. 12(A).

Although Armstrong admitted to the probation violation at the onset of his revocation hearing, the parties thereafter extensively discussed the basis of the violation.

Fred Antonucci, Armstrong's probation officer, told the court his department made arrangements for Armstrong to obtain treatment at the Bradley House, a thirty-day in-patient treatment facility. From there Armstrong was to be transferred to the Salvation Army men's program for follow-up treatment. Treatment at the Bradley House included visits to Alcoholics Anonymous meetings held at other facilities, including Harbor Light and Orca House. Antonucci explained that the problem arose when Armstrong refused to attend meetings at these two facilities.

Armstong's lawyer conceded the accuracy of Antonucci's account, but maintained that Armstrong refused only because he had experienced trouble in the past with certain residents who were being treated at the two centers.

Armstrong elaborated on counsel's statements and informed the court that he raised his objection to the centers to Antonucci and a counselor before he arrived at Bradley House. Once there, he met with the counselor and the director of the program to discuss his problem. Armstrong told the court that the counselor suggested several alternatives, but the director was unwilling to make an exception in his case. The director informed him that if he did not comply with the program, including the required visits to the two facilities, he would report Armstrong to the probation department.

In response to Armstrong's ver-

---

[1] Appellant's assignments of error are:

I

"The lower court erred by not vacating the order of probation violation and sentence and reinstating probation and by not holding an evidentiary hearing where the record indicated that appellant told the trial court that a promise had been made and where counsel's affidavit, as to out of court statements by the state's agent, corroborated the fact of a promise being made to induce the plea of guilty to a probation violation."

II

"The lower court erred by not vacating the order of probation violation and sentence and reinstating probation and by not holding an evidentiary hearing where the record indicated that the probation violation hearing which was held did not meet minimum due process standards because the record showed that appellant had not violated any of the conditions of the probation."

III

"The lower court erred by not vacating the order of probation violation and sentence and reinstating probation and by not holding an evidentiary hearing due to ineffective assistance of counsel where the record indicated that appellant told the trial court that a promise had been made and according to counsel's affidavit, counsel had full knowledge of the promise from an out of court statement by the state's agent and yet allowed appellant to be sentenced to prison, without objecting or mentioning the promise and other due process violations to the trial court."

sion, Antonucci explained that the department had experienced difficulty in placing Armstrong for treatment because he had already been to practically every program available. Antonucci insisted that Bradley House was the only center open to Armstrong. The conduct he found objectionable, Antonucci explained, was Armstrong's refusal even to attempt a visit to the two centers. Antonucci believed the centers were capable of handling any problems which might arise. He pointed out that Armstrong was not asked to go alone, and would have been accompanied to the meetings by sixteen to twenty men in a van.

In an affidavit attached to his petition, Armstrong averred that, prior to the revocation hearing, Antonucci visited him at the jail and told him he arranged Armstrong's placement in the Salvation Army program, and that his treatment there would commence after the revocation hearing. Based on this conversation, Armstrong averred, he permitted his attorney to admit the violation on his behalf.

Armstrong also attached the affidavit of Mercedes MacMasters, an acquaintance of his, who averred she spoke with Antonucci prior to the revocation hearing. MacMasters' account of Antonucci's statements was consistent with that of Armstrong.

Armstrong's attorney, who represented him at both the sentencing and probation violation hearings, stated in an affidavit that he too was informed by Antonucci that Armstrong would be admitted to the Salvation Army program after the hearing.

In its findings of fact and conclusions of law, the trial court concluded that the petition's evidentiary materials were insufficient to show that Armstrong was induced by false promises, or that counsel was ineffective. The court further concluded Armstrong's contentions were rebutted by the record. As to the claim of ineffective assistance of counsel, the court held that the issue could have been raised by appeal and was thus barred by *res judicata.*

In his first assignment of error, Armstrong contends his admission of the probation violation was induced by false promises, resulting in an involuntary waiver of rights and a denial of due process. In support of this proposition, Armstrong draws an analogy to guilty plea cases which hold that a plea is void if it is not knowing and voluntary. See, *e.g., State* v. *Bowen* (1977), 52 Ohio St. 2d 27, 6 O.O. 3d 112, 368 N.E. 2d 843 (guilty plea induced by prosecutor's promise to recommend that sentences run concurrently).

Because the revocation of probation entails a serious loss of liberty, a probationer must be accorded due process at the revocation hearing. *Gagnon* v. *Scarpelli* (1973), 411 U.S. 778; *State* v. *Miller* (1975), 42 Ohio St. 2d 102, 71 O.O. 2d 74, 326 N.E. 2d 259. The due process requirements include notice, an opportunity to present evidence and to confront and cross-examine witnesses, and a hearing before a neutral and detached arbiter. *Gagnon, supra,* at 786.

As a general matter, we agree that an unknowing waiver of these due process rights is invalid. However, on the facts of this case, we reject Armstrong's position that his waiver was involuntary and presumptively prejudicial. Armstrong was permitted to explain his version of the alleged violation at the revocation hearing, and his account was essentially uncontradicted by Antonucci. The only disputed matter was the reasonableness of Armstrong's refusal to attend meetings at Harbor Light and Orca House. Antonucci's position, which was expressly accepted by the trial court, was that Armstrong simply was not entitled to

dictate the conditions of his treatment. We concur in this view.

A trial court may dismiss a petition for postconviction relief without a hearing if the petition and its supporting evidentiary ducuments do not contain operative facts which, if true, would establish a substantive ground for relief. R.C. 2953.21(E). *State* v. *Perry* (1967), 10 Ohio St. 2d 175, 39 O.O. 2d 189, 226 N.E. 2d 104; *State* v. *Poland* (1984), 16 Ohio App. 3d 303, 16 OBR 335, 475 N.E. 2d 794. Armstrong's allegations add nothing to the uncontradicted account he supplied at the hearing. Since he did not allege facts which would tend to undermine the court's determination of the violation, Armstrong can claim no prejudice from his reliance on the alleged promises of Antonucci.

Accordingly, this assignment of error is not well-taken.

In his second and third assignments of error, Armstrong contends: (1) the trial court failed to inquire into the reasons for his discharge from the treatment program; (2) the court admitted hearsay statements; (3) the court failed to provide him with a written statement of evidence; and (4) he was denied the effective assistance of counsel.

The doctrine of *res judicata* bars the postconviction litigation of issues which were or could have been addressed on direct appeal. *State* v. *Perry, supra; State* v. *Cole* (1982), 2 Ohio St. 3d 112, 2 OBR 661, 443 N.E. 2d 169. Since virtually none of Armstrong's arguments raised matters which were *dehors* the record, consideration of his contentions was precluded by *res judicata.* Moreover, Armstrong's claims about defense counsel's alleged lack of preparation do not rise above the "broad conclusory statements" condemned in *State* v. *Pankey* (1981), 68 Ohio St. 2d 58, 22 O.O. 3d 262, 428 N.E. 2d 413.

Accordingly, Armstrong's second and third assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN V. CORRIGAN and DYKE, JJ., concur.