[Cite as *State v. Sutherland*, 2025-Ohio-488.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-6 |
| | : | |
| v. | : | Trial Court Case No. 20CR00091 |
| | : | |
| JEFFREY SCOTT SUTHERLAND | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 14, 2025

. . . . . . . . . . .

MICHAEL T. COLUMBUS, Attorney for Appellant

JAMES DEAN BENNETT, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Jeffrey Scott Sutherland appeals from the trial court's denial of his petitions for postconviction relief, which had alleged ineffective assistance of counsel and prosecutorial misconduct. For the reasons that follow, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} In December 2021, Sutherland was found guilty by a jury of two counts of rape (child under 10) and sentenced to 25 years to life in prison. On direct appeal, we found that his conviction for one count of rape (Count 1) had not been supported by sufficient evidence, but that the evidence as to that count had supported a conviction on the lesser-included offense of gross sexual imposition (GSI). We vacated the rape conviction as to Count 1 and remanded for the trial court to modify its judgment to convict Sutherland of GSI and sentence him for that offense. We affirmed Sutherland's conviction for rape as to Count 2. *State v. Sutherland*, 2022-Ohio-3079, ¶ 50 (2d Dist.).

{¶ 3} On February 17, 2023, Sutherland filed a petition for postconviction relief. He raised issues of alleged ineffective assistance of counsel and prosecutorial misconduct. Sutherland filed a second petition for postconviction relief on September 20, 2023, raising the same issues. Sutherland supported his petitions with exhibits and his affidavits. The State responded to both petitions.

{¶ 4} On February 7, 2024, the trial court denied Sutherland's petitions without a hearing. The court found that Sutherland's allegations regarding ineffective assistance of counsel were barred by the doctrine of res judicata, because they related directly to matters in the trial record. Further, because new counsel had been appointed for Sutherland on direct appeal, Sutherland could have made the ineffective assistance of counsel allegations at that time, but he failed to do so. Accordingly, the court found that Sutherland was barred from asserting a claim for ineffective assistance "based on matters found in the trial record."

{¶ 5} The court found that Sutherland's claim of ineffective assistance also relied upon various items of evidence not utilized at trial: a report by children services; progress notes by a counselor who treated the victim; Sutherland's Police Academy Certificate; a psychosexual report about Sutherland generated by a defense expert; and police interview reports with witnesses. It was significant to the court that Sutherland did not claim that the items were newly discovered evidence of material fact; rather, he argued that the items should have been utilized by defense counsel but were not, and as such, trial counsel was ineffective.

{¶ 6} The trial court observed that Sutherland had alleged numerous incidents of ineffective communication between him and defense counsel during the case and at trial. It was significant to the court that trial counsel had been retained by Sutherland, and he could have retained substitute counsel if he believed trial counsel to be ineffective as alleged. According to the court, this reason alone was sufficient for the court to conclude that Sutherland's allegations did "not state a substantial ground" for relief. The court further noted that Sutherland had expressed satisfaction with trial counsel at the conclusion of trial in response to questioning by the court.

{¶ 7} The court concluded that trial counsel had not been deficient, and even if counsel should have offered additional material into evidence or communicated more effectively with Sutherland, there was no "reasonable probability" that it would have affected the outcome of the proceedings. Further, the court found that "the additional proffered evidence would have been more harmful than helpful." Accordingly, the court determined that trial counsel's errors, if any, were not so serious as to deprive Sutherland

of a fair trial.

**{¶ 8}** Regarding prosecutorial misconduct, the court found that allegations of ineffective communications or differences of opinion between Sutherland and trial counsel did not provide substantive grounds for relief. The court noted that several of Sutherland's allegations were based on matters in the record, namely the prosecutor's comments during closing arguments, State's Exhibit 5, and the State's use of Sutherland's Google searches. The court found that res judicata barred Sutherland's claims and also noted that we previously had concluded that "It was error for the jury to see the entirety of Exhibit 5, but it was harmless error as Sutherland's substantial rights were not abrogated." *Sutherland,* 2022-Ohio-3079, at ¶ 25.

**{¶ 9}** Regarding Sutherland's allegation of prosecutorial misconduct in the nature of witness tampering, namely the prosecutor's alleged nodding, head shaking, and facial expressions during witness testimony, the court found that Sutherland's reliance upon *State v. Tilley*, 2012-Ohio-1533, ¶ 26 (8th Dist.), was misplaced. The trial court distinguished *Tilley*, noting that the Eighth District "granted post-conviction relief because the prosecutor's *questions* 'were improper and wrongfully impugned the credibility of the defense witness,' not because the prosecutor nodded in agreement with the witness." (Emphasis added.) The court found that it appeared "beyond a reasonable doubt that the jury would have found the [Sutherland] guilty even absent the alleged misconduct."

**{¶ 10}** After reviewing the record from the trial proceedings and the evidence filed by the parties in the postconviction proceedings, the trial court concluded that Sutherland had failed to establish substantive grounds for relief requiring a hearing. Noting that

Sutherland's attorney had provided significant detail in support of the allegations in the petitions, including two affidavits by Sutherland and copies of the exhibits Sutherland claimed should have been introduced at trial, the court further found that a hearing on the pending motions "would not assist the Court – merely stating 'in person' what has already been stated 'in brief' is not necessary. Plus, the exhibits attached to Defendant's motion require no oral explanation or context."

{¶ 11} Sutherland appeals from the denial of his petitions without a hearing.

**Assignments of Error and Analysis**

{¶ 12} Sutherland's first assignment of error is:

APPELLANT'S PETITIONS FOR POST-CONVICTION RELIEF PRESENTED SUBSTANTIVE GROUNDS SUFFICIENT TO GRANT RELIEF FROM CONVICTION LET ALONE A HEARING TO PERMIT THE PRESENTATION OF EVIDENCE OUTSIDE THE TRIAL COURT AND APPELLATE RECORDS.

Sutherland makes four arguments under this assignment of error: the prosecutor engaged in misconduct by "intentionally delivering to the jury the highly prejudicial and non-probative unredacted Exhibit 5"; the prosecutor tampered with witness testimony, as allegedly reflected in video of the trial; the prosecutor engaged in misconduct as demonstrated by video evidence outside the record; and res judicata did not apply to the alleged video evidence. Sutherland claims that the prosecutor's actions denied Sutherland his constitutionally-protected right to a fair and impartial trial.

{¶ 13} R.C. 2953.21 governs petitions for postconviction relief. R.C. 2953.21(A)(1)(a) provides:

A person in any of the following categories may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief:

(i) Any person who has been convicted of a criminal offense . . . and who claims there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.

{¶ 14} "A petition for 'postconviction relief is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction.' " *State v. Mott*, 2022-Ohio-2894, ¶ 10 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, ¶ 37 (10th Dist.). The postconviction relief process is a civil collateral attack on a criminal judgment and is not an appeal of the judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999).

{¶ 15} The petitioner "may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(b). The trial court is required to consider the petition and any supporting affidavits and documentary evidence. R.C. 2953.21(D). "When the evidence a defendant relies upon [is] dehors the record that evidence must meet a threshold of cogency." *State v. Hill*, 2005-Ohio-3176, ¶ 8 (2d

Dist.), quoting *State v. Lawson*, 103 Ohio App.3d 307 (12th Dist.1995). "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.' " *Id.*

**{¶ 16}** A postconviction relief petitioner is not automatically entitled to a hearing. *Calhoun* at 282. Instead, "a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor*, 2006-Ohio-6679, ¶ 51. Before granting a hearing on a petition, the trial court shall determine whether there are substantive grounds for relief. *State v. Perry*, 2016-Ohio-4582, ¶ 24 (2d Dist.). It is the petitioner's initial burden to provide evidence containing sufficient operative facts to show a cognizable claim of constitutional error. *State v. Kapper*, 5 Ohio St.3d 36, 37-38 (1983). A postconviction relief petition may be denied, without a hearing, if the petition and its supporting evidentiary documents do not contain operative facts that would, if proven, establish a substantive ground for relief. *State v. Armstrong*, 56 Ohio App.3d 105, 108 (8th Dist. 1988). "A petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than [his] own self-serving affidavit or statements in his petition, which alone are legally insufficient to rebut the record on review." *Kapper* at 38. "Broad conclusory allegations are insufficient, as a matter of law, to require a hearing." *State v. Coleman*, 2005-Ohio-3874, ¶ 17 (2d Dist.).

**{¶ 17}** Res judicata is applicable in all postconviction relief proceedings. *State v. Blanton*, 2022-Ohio-3985, ¶ 43. In *State v. Goldwire*, 2005-Ohio-5784, ¶ 11 (2d Dist.), we discussed the role of res judicata in the analysis of petitions for postconviction relief:

"The most significant restriction on Ohio's statutory procedure for post-

conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe*, 2005-Ohio-5242, [¶ 9 (10th Dist.)]. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180 . . . . "Our statutes do not contemplate relitigation of those claims in postconviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claims based upon information contained in the original record." *State v. Aldridge*, [120 Ohio App.3d 122, 151 (1997)]. " 'Res judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could have been, raised, in the context of the petitioner's trial or direct appeal.['] " *Monroe.*

"For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material

evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of trial. . . ." *State v. Jackson*, 2007-Ohio-1474, ¶ 21 (10th Dist.).

**{¶ 18}** "We review a trial court's denial of post-conviction relief under R.C. 2953.21 for an abuse of discretion . . . ." *State v. White*, 2008-Ohio-1623, ¶ 45. "The term 'abuse of discretion' has been defined as a decision that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *State v. Howard*, 2014-Ohio-4602, ¶ 8 (2d Dist.).

**{¶ 19}** With respect to prosecutorial misconduct, the test "is whether remarks [or actions] were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones*, 90 Ohio St.3d 403, 420 (2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Garrett*, 2022-Ohio-4218, ¶ 144, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed." *State v. Stevenson*, 2008-Ohio-2900, ¶ 42 (2d Dist.), citing *State v. Loza*, 71 Ohio St.3d 61, 78 (1994).

### 1. Exhibit 5

**{¶ 20}** As the trial court noted, in Sutherland's direct appeal, we discussed Exhibit 5 in the context of a motion for mistrial that Sutherland had filed and the trial court had denied. *Sutherland,* 2022-Ohio-3079, at ¶ 14. Exhibit 5 contained "admissible but incriminating" Google searches found on Sutherland's phone and part of an Ohio Bureau

of Criminal Investigation (BCI) report. *Id.* at ¶ 15. The Google searches included: "Detecting the presence of male DNA in cases of sexual assault without ejaculation"; "Detecting seminal fluid and saliva in sexual assault kits"; "Detecting saliva inside a vagina"; "digital vaginal DNA life"; "How long does skin DNA last in a woman's body"; "How long does skin DNA last"; and "How long can DNA last in a vagina?" *Id.* at ¶ 6.

{¶ 21} The issue on appeal was that, instead of sending the jury only the Google searches, "the entire BCI report was inadvertently sent to the jury room (which included internet searches for 'father-step-daughter' pornography) that the State did not bring up during testimony or attempt to admit." *Id.* at ¶ 15. After the jury asked the court if it was permitted to consider the entire exhibit since it had not been discussed at trial in its entirety, the court denied the request and provided a curative instruction. *Id.* at ¶ 16. Sutherland's subsequent motion for mistrial was denied. *Id.*

{¶ 22} On appeal, Sutherland argued that, even with the curative instruction, "the material the jurors saw was so prejudicial that he could not have received a fair trial." *Id.* at ¶ 17. We concluded that, although there were portions of Exhibit 5 "that painted [Sutherland] in an extremely unfavorable light," it did not impact the trial. *Id.* at ¶ 21. We found it significant that both parties had assented to the content of the curative instruction, noting that "Ohio courts have consistently held that juries are presumed to follow the instructions, including curative instructions given by a trial court." *Id.* at ¶ 22. Further, in response to a question to every juror by the court, "[e]ach one explicitly denied using or considering the unadmitted materials to reach the verdict." *Id.* We observed that the evidence in question "did not prove an element of the crime, it simply portrayed

[Sutherland] in an unfavorable light." *Id.* at ¶ 23. Finally, we noted that the jury had heard explicit testimony from the victim regarding Sutherland's conduct, and her testimony "aligned with the Google searches found on Sutherland's phone." *Id.* at ¶ 25.

{¶ 23} The trial court correctly found that any issue as to the admission of Exhibit 5 in its entirety had been thoroughly litigated on direct appeal. Accordingly, it properly found that the doctrine of res judicata applied to Sutherland's arguments about the exhibit.

### 2. Alleged Trial Video

{¶ 24} According to Sutherland, a video of the trial reflected witness tampering by the prosecutor in the nature of "constant gesturing and signaling to witnesses throughout the trial to elicit the State's desired responses." Sutherland argues that the State used "subtle, and not so subtle, non-verbal clues such as gestures, nods, and facial expressions to steer witnesses" to give its desired response, which prejudiced him and denied him a fair trial. Sutherland asserts that such alleged tampering was "particularly concerning" with respect to the testimony from the victim and called her credibility and "true independent recollection" into question.

{¶ 25} Sutherland asserts that the video of the trial was neither in the trial court record nor the appellate court record, and his motion requesting the video was denied. He argues that "[n]otably, the trial court did not deny that the surveillance video shows what . . . Sutherland alleges," and he asserts that the video "contains the requisite 'factual allegations' " to support his petitions.

{¶ 26} Finally, Sutherland asserts that the allegations in his petitions "could not have been litigated at trial or on appeal as the surveillance video was not part of the record

or available. The sealed video is competent, relevant, and material evidence outside the trial record that was unavailable at trial or on appeal and currently unavailable for this Court to review."

{¶ 27} The record reflects that Sutherland filed a motion to release the trial video on February 26, 2024, and the trial court denied the motion on March 22, 2024. The court noted that the issue had been previously decided when, on December 13, 2021, the court granted a joint motion by the parties not to live-stream the trial on YouTube. The court stated that, because of this agreement, no video recording of the trial on the court's recording system had been made. The court also stated that, to the extent Sutherland sought "security surveillance video administered by the Darke County Sheriff's Department, the State indicated that it approved . . . Sutherland's request to possess surveillance video footage from the hearing, with the limitation that it would be for 'counsel-eyes only.' "[1] The court noted that Sutherland's attorney had been allowed to view the surveillance video.

{¶ 28} The trial court did not abuse its discretion when it concluded that Sutherland had failed to demonstrate substantive grounds for relief on the basis of alleged witness tampering. Sutherland was present during the alleged gesturing and was therefore aware of it at that time. Because this issue occurred at trial and could have been made

---

[1] Crim.R. 16(C) states: "The prosecuting attorney may designate any material subject to disclosure under this rule as 'counsel only' by stamping a prominent notice on each page or thing so designated. . . . Except as otherwise provided, 'counsel only' material may not be shown to the defendant or any other person, but may be disclosed only to defense counsel, or the agents or employees of defense counsel, and may not otherwise be reproduced, copied or disseminated in any way. Defense counsel may orally communicate the content of the 'counsel only' material to the defendant."

part of the record, it is not properly raised in postconviction relief.  There was no "new evidence."  Moreover, Sutherland's attorney was able to view the security video and orally communicate its contents to his client. Nonetheless, Sutherland dd not describe with any specificity the actions by which the prosecutor allegedly coached the witnesses or identify specific portions of testimony where these actions allegedly occurred; he made only self-serving and vague arguments about the prosecutor's alleged gestures, nods, and facial expressions throughout the proceedings.

{¶ 29} Finally, the trial court thoroughly, paragraph by paragraph, reviewed Sutherland's petitions for postconviction relief.  The trial court did not abuse its discretion in concluding that the supporting documents lacked operative facts that would establish grounds for relief if proven.  Thus, Sutherland was not entitled to a hearing. For the foregoing reasons, Sutherland's first assignment of error is overruled.

{¶ 30} Sutherland's second assignment of error is as follows:

THE TRIAL COURT ERRED BY REFUSING TO RELEASE THE SURVEILLANCE VIDEO AS IT IS DISCOVERABLE EVIDENCE.

{¶ 31} In his second assignment of error, Sutherland asserts that the trial court did not provide "any legitimate reason why the surveillance video could not be used in a post-conviction hearing" with safeguards sufficient to protect the identities of the jurors and the victim from disclosure.  Sutherland notes that the parties already know the identities of the jurors and victim.

{¶ 32} In light of the parties' agreement that the trial would not be recorded, Sutherland's first-hand knowledge of the prosecutor's alleged gestures, nods, and facial

expressions at trial, and his failure to specify how any such motions impacted the outcome of the trial, the trial court reasonably concluded that the surveillance video did not provide a basis for postconviction relief. Thus, Sutherland's second assignment of error is without merit.

{¶ 33} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .


EPLEY, P.J. and LEWIS, J., concur.