[Cite as *State v. Baker*, 2026-Ohio-2245.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JONATHAN BAKER,

    DEFENDANT-APPELLANT.

CASE NO. 13-26-02

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Trial Court No. 23 CR 0136

Judgment Affirmed

Date of Decision: June 15, 2026

APPEARANCES:

    *Jonathan J. Baker* Appellant

    *Derek W. DeVine* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Jonathan Baker ("Baker'), appeals the judgment entered against him in the Seneca County Court of Common Pleas, wherein the trial court denied a petition for postconviction relief filed by Baker. For the reasons set forth below, we affirm.

*Factual Background and Procedural History*

{¶2} This case stems from Baker's fatal shooting of his 7-month-old daughter, which occurred on June 27, 2023. On that date, following a domestic dispute with the mother of his infant daughter at their home in North Baltimore, Ohio, Baker fled from the home with the baby. Baker drove to a firearms store in Findlay, Ohio, where he parked his car in an obscured location, left the infant in the car, and went inside. Once inside, Baker spent approximately 30 minutes casually interacting with the store staff while purchasing a Glock 19 handgun, after giving the staff a fabricated excuse for why he wanted to buy it. In the meantime, the infant's mother had called the police and the North Baltimore Police Department issued a BOLO for Baker and his vehicle, which is an alert that is broadcast to multiple law enforcement agencies requesting that they be on the lookout for the vehicle or person at issue.

{¶3} Later that afternoon, law enforcement officers in Seneca County, who were aware of the BOLO alert, observed Baker's vehicle being driven in Tiffin, Ohio. An off-duty officer in his personal vehicle initially began to follow Baker's

car, and then two marked cruisers, with lights and sirens activated, pulled in behind Baker's moving vehicle. At that time, Baker's vehicle abruptly accelerated, veered off the road, and crashed into a house.

{¶4} Multiple officers quickly approached the wrecked vehicle, where Baker was found in the driver's seat, with serious injuries resulting from a self-inflicted gunshot wound to the mouth and throat. The only other occupant of the car was Baker's infant daughter, who was located in a car seat strapped into the back seat. The infant was barely breathing and was observed to have extensive head injuries. Baker's daughter was rushed to a nearby hospital, but died enroute. A subsequent autopsy revealed that the infant's cause of death was two gunshot wounds to the head, both of which had been inflicted at very close range.

{¶5} On July 12, 2023, a Seneca County grand jury returned an indictment against Baker, charging him with Kidnapping, a first-degree felony in violation of R.C. 2905.01(B)(1), and with Aggravated Murder, an unclassified felony in violation of R.C. 2903.01(C). The second count of the indictment, being the aggravated murder charge, also contained a firearm specification pursuant to R.C. 2941.145(A).

{¶6} On July 19, 2023, an arraignment was held and Baker entered an initial plea of not guilty to both counts of the indictment.

{¶7} On August 18, 2023, Baker filed a motion raising his competency to stand trial. On August 22, 2023, the trial court ordered a competency evaluation.

Following the completion of that evaluation, the trial court determined on October 20, 2023 that Baker was competent to stand trial.

{¶8} On May 30, 2024, Baker filed a motion for leave to amend his plea of not guilty to a plea of not guilty by reason of insanity ("NGRI"). He also submitted a written plea of NGRI and requested an independent forensic examination. On June 10, 2024, the trial court granted Baker's motion to amend his plea, accepted the NGRI plea, and granted Baker's request for an independent forensic exam.

{¶9} On September 30, 2024, a jury trial commenced in the case. At trial, the State of Ohio presented a number of witnesses and evidentiary exhibits in support of the charges contained in the indictment, charges which the defense did not contest Baking having committed.

{¶10} After the prosecution rested its case at trial, the defense presented a case in support of Baker's affirmative defense of NGRI. During the defense case, the testimony of three lay witnesses was presented, along with that of Dr. Richard Bromberg, a forensic clinical psychologist. After being qualified and recognized by the trial court as an expert in the field of forensic psychology specializing in sanity evaluations, Bromberg testified at length and identified the report he had authored after evaluating Baker, all in support of Bromberg's ultimate expert opinion that Baker was not guilty by reason of insanity, in that, at the time of the commission of the offenses, Baker did not know, as a result of severe mental illness, the wrongfulness of his acts.

{¶11} After the defense rested its case, the State of Ohio then called Dr. Brian O'Reilly as a rebuttal witness. O'Reilly, also a forensic clinical psychologist, was qualified and then recognized by the trial court to be an expert in that field. O'Reilly testified at length and identified the report he had issued after evaluating Baker, all in support of O'Reilly's expert opinion that Baker was malingering and that, at the time of committing the offenses, Baker was not experiencing a several mental illness and was capable of knowing the wrongfulness of his acts.

{¶12} On October 3, 2024, the jury returned verdicts finding Baker guilty of the crimes and the specification charged in the indictment. The trial court accepted the verdicts, discharged the jury, and ordered a presentence investigation.

{¶13} On October 28, 2024, a sentencing hearing was held. Baker was sentenced to an indefinite prison term of 11 to 16 1/2 years on Count 1, to life in prison without the possibility of parole on Count 2, and to a 3-year prison term for the firearm specification, with all sentences ordered to be served consecutively.

{¶14} On November 8, 2024, Baker filed a direct appeal. On June 16, 2025, this Court affirmed Baker's conviction and sentence in *State v. Baker*, 2025-Ohio-2107 (3d Dist.) (discretionary appeal not allowed by *State v. Baker*, 2025-Ohio-3300).

{¶15} On December 17, 2025, Baker filed a petition for postconviction relief pursuant to R.C. 2953.21, asserting his conviction was void or voidable under the United States Constitution or the Ohio Constitution. Specifically, the first claim

raised in the petition asserted that Baker's trial counsel was ineffective in failing to file a motion to exclude the trial testimony of Dr. O'Reilly on the basis that O'Reilly's methodology was unreliable and, therefore, his expert opinion was inadmissible pursuant to Evid.R. 702. The second claim raised in the petition asserted that Baker's trial counsel was ineffective in failing to introduce exculpatory evidence relating to the kidnapping charge.

{¶16} On January 13, 2026, the trial court filed a judgment entry denying Baker's petition for postconviction relief, finding that a hearing was not required and determining that Baker's postconviction claims were barred by the doctrine of res judicata.

{¶17} On February 8, 2026, Baker filed the instant appeal of the trial court's January 13, 2026 judgment. On appeal, Baker raises two assignments of error for our review.

### First Assignment of Error

**Trial Court Abused its Discretion when it refused to hold an evidentiary hearing and adjudicate appellant's claims of ineffective assistance of counsel when presented with sufficient operative facts *outside* the record, and which clearly demonstrates [sic] ineffective assistance of counsel, which violates appellant's 5th, 6th, and 14th U.S. Constitutional Amendment rights, Article I Section 10 of the Ohio Constitution, and Article I Section 16 of the Ohio Constitution.** (Emphasis *sic*.)

### Second Assignment of Error

**Trial Court Abused its Discretion when it refused to adjudicate appellant's ineffective assistance of counsel claims by denying**

**said claims as <u>barred by res judicata</u>, which violates appellant's 5th, 6th, and 14th U.S. Constitutional Amendment rights, Article I Section 10 of the Ohio Constitution, and Article I Section 16 of the Ohio Constitution.** (Emphasis *sic*.)

*Analysis of Assignments of Error*

{¶18} In the two assignments of error raised in this appeal, which we shall jointly address, Baker argues that the trial court erred in denying his petition for postconviction relief and in not holding a hearing prior to doing so.

{¶19} Appellate courts apply an abuse of discretion standard in reviewing a trial court's "decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing * * * ." *State v. Hatton*, 2022-Ohio-3991, ¶ 38. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying the abuse of discretion standard, an appellate court is not to substitute its judgment for that of the trial court. *State v. Thompson*, 2017-Ohio-792, ¶ 11 (3d Dist.).

{¶20} "'Postconviction review is not a constitutional right, but is a collateral civil attack on a judgment that is governed solely by R.C. 2953.21.'" *State v. Richard*, 2025-Ohio-2943, ¶ 11 (3d Dist.), quoting *State v. Keith*, 2008-Ohio-741, ¶ 24 (3d Dist.). Pursuant to R.C. 2953.21(A)(1)(a)(i), a petition for postconviction relief may be filed by any person convicted of a criminal offense "who claims that there was such a denial or infringement of the person's rights as to render the

judgment void or voidable under the Ohio Constitution or the Constitution of the United States[.]"

**{¶21}** Pursuant to R.C. 2953.21(A)(1)(b), "[a] petitioner under division (A)(1)(a) of this section may file a supporting affidavit and other documentary evidence in support of the claim for relief."

R.C. 2953.21(D) then provides, in relevant part:

> Before granting a hearing on a petition filed under division (A)(1)(a)(i) * * * of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.

**{¶22}** Thus, a petitioner is not automatically entitled to an evidentiary hearing upon filing a petition for postconviction relief. *State v. Bender*, 2021-Ohio-1931, ¶ 7 (3d Dist.). "Rather, the petitioner must carry the initial burden of providing evidence of sufficient operative facts that demonstrate the alleged errors asserted in the petition." *State v. Richard*, *supra*, at ¶ 13, citing *State v. Workman*, 2019-Ohio-5379, ¶ 10 (3d Dist.). "'A postconviction relief petition may be denied, without a hearing, if the petition and its supporting evidentiary documents do not contain operative facts that would, if proven, establish a substantive ground for relief.'" *Richard*, at ¶ 13, quoting *State v. Sutherland*, 2025-Ohio-488, ¶ 16 (2d Dist.).

{¶23} Additionally, "a trial court may properly deny a petition for postconviction relief without holding a hearing if the claims in the petition are barred by res judicata." *State v. Sutton*, 2025-Ohio-2487, ¶ 35 (3d Dist.). "Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, *or on an appeal* from that judgment." *State v. Perry*, 10 Ohio St.2d 175, paragraph 9 of the syllabus (1967) (emphasis *sic*). Res judicata applies to postconviction review proceedings because the postconviction process does not provide the petitioner a second opportunity to litigate his or her conviction. *State v. Lewis*, 2019-Ohio-3031, ¶ 13 (3d Dist.).

{¶24} "'To overcome the res judicata bar, evidence offered [outside] the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record.'" *Lewis*, at ¶ 14 (3d Dist.), quoting *State v. Slagle*, 2012-Ohio-1936, ¶ 16 (4th Dist). "'This means that the evidence relied upon must not be evidence which was in existence or available for use at the time of trial or direct appeal, and finally, cannot be merely cumulative of the evidence already presented.'" *Id.*, quoting *State v. Murphy*, 2000 WL 1877526, *3 (10th Dist. Dec. 26, 2000).

**{¶25}** In the instant case, Baker's petition for postconviction relief was based on claims of ineffective assistance of trial counsel. To establish ineffective assistance of counsel, the appellant bears the burden of establishing "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Tench*, 2018-Ohio-5205, ¶ 264. An appellate court need not consider the facts of the case under both prongs of that standard if the appellant makes an insufficient showing on one. *State v. Sutton*, 2025-Ohio-2487, ¶ 17 (3d Dist.).

**{¶26}** In *Sutton*, this Court explained the standard for establishing ineffective assistance of counsel as follows:

> Regarding the first requirement, "[i]n order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment." *State v. Houston*, 2010-Ohio-6070, ¶ 35 (3d Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *Id.*, citing *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267 (1998). With respect to the second requirement, "[p]rejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Houston* at ¶ 36, quoting *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

*Id.*, at ¶ 18.

{¶27} With regard to the applicability of res judicata to postconviction claims of ineffective counsel, "since 'counsel cannot realistically be expected to argue his own incompetence, *res judicata* does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief.'" *State v. Lentz*, 70 Ohio St.3d 527, 529-530 (1994), quoting *State v. Cole*, 2 Ohio St.3d 112, 114, fn.1 (1982). But, "where a defendant was represented by new counsel on direct appeal 'who was in no way enjoined from asserting the ineffectiveness of appellant's trial counsel,' claims of ineffective assistance *must be brought on direct review*." (Emphasis *sic*.) *State v. Bradley*, 2008-Ohio-6071, ¶ 8 (3d Dist.), quoting *Cole* at 114. However, while ineffective assistance of trial counsel should ordinarily be raised on direct appeal, res judicata does not bar a defendant from raising ineffective assistance in a petition for postconviction relief if the claim is based on evidence outside the record. *Bradley*, at ¶ 7.

{¶28} With all of those legal standards in mind, we turn our attention to Baker's postconviction claims of ineffective counsel in the instant case.

{¶29} As a preliminary matter, the record reflects that Baker was represented by different counsel in his direct appeal than in the trial court. Accordingly, as outlined above, his ineffective assistance of counsel claims are barred by res judicata if they were raised or could have been raised on direct appeal, unless the claims are based on evidence outside the record and such evidence was not in existence or

available for use at the time of trial and is not merely cumulative of the evidence presented.

{¶30} The first claim raised in Baker's postconviction petition was that Baker's trial counsel was ineffective for not moving to exclude the trial testimony of the state's psychological expert, Dr. O'Reilly, on the basis that O'Reilly's methodology was unreliable and, therefore, his expert opinion was inadmissible pursuant to Evid.R. 702.

{¶31} Specifically, Baker asserted in his postconviction petition that the M-FAST, a psychological test used by Dr. O'Reilly to evaluate the legitimacy of Baker's claim of mental illness, was unreliable because the results of that test are prone to false positives reflecting malingering when used to evaluate persons who suffer from severe head trauma. Baker claimed that, because Dr. O'Reilly's methodology was unreliable, his testimony as an expert witness was inadmissible under Evid.R. 702, and should have been challenged on that basis by trial counsel.

{¶32} In support of that claim, Baker submitted several documents with his postconviction petition, including a published critical review of the M-FAST authored by a group of professors specializing in psychiatry, psychology, and behavioral health; some of Baker's own medical records from his hospitalization resulting from the June 27, 2023 shooting incident; a copy of a Tiffin Police Department report regarding the June 27, 2023 incident; and copies of two online articles relating to traumatic brain injury and strokes.

-12-

{¶33} On appeal, Baker asserts that those documents amount to evidence outside the record that supports his ineffective counsel claim regarding counsel's failure to challenge the admissibility of Dr. O'Reilly's testimony and, therefore, Baker argues that the trial court erred in denying that claim on the basis of res judicata.

{¶34} With regard to the expert testimony presented at trial in this case, this Court detailed the same in our decision in Baker's direct appeal as follows:

> In this case, two forensic clinical psychology experts, Dr. Richard Bromberg ("Dr. Bromberg") – on Baker's behalf – and Dr. Brian O'Reilly ("Dr. O'Reilly") – on behalf of the State – presented testimony regarding Baker's mental state at the time that the offenses were committed.
>
> Dr. Bromberg testified that Baker suffered from major depressive disorder with psychotic features, which impaired his ability to understand the wrongfulness of his actions at the time of the offenses at issue in this case. To reach his diagnosis, Dr. Bromberg conducted a comprehensive evaluation, including interviews with Baker's family, to understand his history and mental state leading up to the offense. Dr. Bromberg's evaluation included two psychological tests (the MMPI and the PAI), which Dr. Bromberg testified indicated that Baker was not malingering but attempting to minimize his psychological problems. [fn1 - The MMPI (Minnesota Multiphasic Personality Inventory) is a personality test used to assess symptoms of various mental disorders, while the PAI (Personality Assessment Inventory) is a clinical assessment tool that provides a comprehensive evaluation of adult psychopathology and personality.]
>
> A significant part of Dr. Bromberg's testimony focused on challenging the reliability of the M-FAST, which Dr. O'Reilly had used. Relevantly, Dr. Bromberg highlighted research indicating that head trauma, such as the self-inflicted gunshot wound Baker sustained, can cause false positives on the M-FAST. He also pointed out that Dr. O'Reilly did not include a caveat in his report about

Baker's head trauma and its potential impact on the M-FAST results, which was a departure from the American Psychological Association's guidelines. Importantly, Dr. Bromberg emphasized that Baker's head trauma was a critical factor that Dr. O'Reilly did not take into account when administering his testing. Furthermore, while Dr. Bromberg acknowledged inconsistencies in Baker's statements, which he attributed to a changing mental state over time, he also conceded that his evaluation did not include a review of the gun store surveillance video.

Conversely, Dr. O'Reilly testified that he concluded that Baker was not experiencing a mental disease or defect at the time of the offenses at issue in this case and that Baker understood the wrongfulness of his actions. Pertinently, Dr. O'Reilly's evaluation included a review of records and an interview with Baker, during which Baker presented a version of events involving an intruder, which Dr. O'Reilly found unbelievable. Dr. O'Reilly concluded that Baker was malingering, or faking symptoms of mental illness, based on inconsistencies in Baker's accounts and the results of the M-FAST. [fn2 - The M-FAST (Miller Forensic Assessment of Symptoms Test) is a tool used by evaluators to assess the validity of an individual's reported symptoms of mental illness, helping to detect potential malingering.]

Dr. O'Reilly also reviewed the gun store surveillance video and noted that Baker spent approximately thirty minutes with the clerk making a handgun purchase without exhibiting any abnormal behavior, suspiciousness, paranoia, or delusional thoughts. Further, Dr. O'Reilly downplayed the significance of Baker's reported paranoia and hallucinations in jail, suggesting they were not corroborated and possibly related to his incarceration. Moreover, Dr. O'Reilly criticized Dr. Bromberg's methodology, particularly the administration of the MMPI test, suggesting that the way the test was administered could have influenced the results. In sum, Dr. O'Reilly's opinion was that Baker was not experiencing a severe mental disease or defect at the time of the offense and that his actions were driven by anger and vengeance.

*State v. Baker*, 2025-Ohio-2107, ¶¶ 12-16.

**{¶35}** Thus, the record reflects that the issue of the reliability of the M-FAST, upon which Baker bases his first postconviction claim of ineffective assistance of counsel, was specifically raised at trial by Baker's counsel through the questioning of Dr. Bromberg, the defense expert, and was further addressed extensively in Bromberg's testimony. Baker was therefore not barred on direct appeal from asserting that his trial counsel was ineffective for failing to move to exclude the testimony of the state's expert, Dr. O'Reilly, on the basis of the M-FAST's unreliability. Moreover, Baker's postconviction exhibits do not establish any facts that were unknown at the time of trial or direct appeal that are essential to his first postconviction claim of ineffective assistance of counsel. *See State v. Sutton*, 2025-Ohio-2487, ¶ 21 (3d Dist.), citing *State v. Newberry*, 2025-Ohio-2004, ¶ 27 (8th Dist.). For all of those reasons, the trial court did not err in finding that Baker's first postconviction claim was barred by res judicata.

**{¶36}** Further, even if Baker's first postconviction claim was not barred by res judicata, Baker still failed to establish that trial counsel was ineffective in failing to move to exclude Dr. O'Reilly's testimony on the basis that O'Reilly's methodology was unreliable and, therefore, that his expert opinion was inadmissible pursuant to Evid.R. 702.

**{¶37}** Evid.R. 702, pursuant to which Baker argues that his counsel should have moved to exclude Dr. O'Reilly as a witness, provides:

A witness may testify as an expert if the proponent demonstrates to the court that it is more likely than not that all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶38} Baker argued in his postconviction petition, as he does on appeal, that the documentation he submitted with his postconviction petition regarding the alleged unreliability of the M-FAST would have served to preclude Dr. O'Reilly's testimony pursuant to Evid.R. 702. However, Baker's argument regarding admissibility under Evid.R. 702 lacks legal merit, as his argument does not go to the validity of the scientific principles at issue but, rather, the weight of the evidence or the credibility of the expert. *See State v. Nemeth*, 82 Ohio St.3d 202, 210

("[S]cientific opinions need not enjoy 'general acceptance' in the relevant scientific community in order to satisfy the reliability requirement of Evid.R. 702. Further, there need not be any agreement in the scientific community regarding the expert's actual opinion or conclusion. The credibility of the conclusion and the relative weight it should enjoy are determinations left to the trier of fact.").

**{¶39}** Moreover, it is well established that a trial attorney is not ineffective for failing to file a motion that had no reasonable probability of success. *See, e.g., State v. Boone*, 2023-Ohio-2017, ¶ 11 (9th Dist.), citing *State v. Clutter*, 2008-Ohio-3954, ¶ 19 (9th Dist.); *State v. Jones*, 2019-Ohio-2134, ¶ 52 (10th Dist.); *State v. Adkins*, 2005-Ohio-2577, ¶ 14 (4th Dist.). Put another way, "[a] defense counsel's failure to object is not ineffective assistance of counsel if the evidence is admissible." *State v. Brown*, 2020-Ohio-3614, ¶ 79 (3d Dist.).

**{¶40}** Thus, the alleged error of which Baker now complains did not amount to ineffective assistance of counsel, as Baker has not established that his trial counsel's performance was deficient, much less that any deficiency prejudiced him.

**{¶41}** In conclusion, upon reviewing Baker's first postconviction claim in light of the record before us and the applicable legal authority, we find that the trial court did not abuse its discretion in denying that claim.

**{¶42}** The second claim raised in Baker's postconviction petition asserted that his trial counsel was ineffective in failing to introduce exculpatory evidence relating to the charge of Kidnapping. In that regard, Baker made – and makes, on

appeal – the argument that evidence existed that established he did not commit Kidnapping as charged in Count 1 of the indictment, and that his trial counsel was ineffective in failing to mount a defense based on that evidence.

{¶43} In support of that claim, Baker submitted several documents with his postconviction petition, including transcriptions of recorded phone conversations that Baker and the mother of his infant daughter had with police on June 27, 2023; a screenshot of a December 15, 2022 text message sent by the mother of Baker's child in which she references a prescription for medication she was taking; a copy of Baker's deceased daughter's birth certificate; and copies of utility bills and a mortgage statement from June of 2023 for Baker's then residence in North Baltimore, Ohio, which reflect Baker as the responsible party on those accounts.

{¶44} On appeal, Baker asserts that those documents constitute evidence outside the record that supports his ineffective counsel claim regarding counsel's failure to defend the kidnapping claim on the basis that Baker did not commit the offense. However, Baker's postconviction exhibits do not establish any facts that were unknown to him at the time of trial or direct appeal that are essential to his postconviction claim of ineffective assistance of counsel. More importantly, Baker's argument is such that the same general claim of ineffective assistance of counsel could have been raised on direct appeal. Accordingly, the trial court did not abuse its discretion in finding that Baker's second postconviction claim was barred by res judicata.

{¶45} Additionally, assuming arguendo that Baker's second postconviction claim was not barred by res judicata, we conclude on the basis of the record before us that Baker failed to establish that his trial counsel was ineffective in not defending the kidnapping charge on the merits.

{¶46} Count 1 of the indictment charged Baker with Kidnapping in violation of R.C. 2905.01(B)(1), which provides:

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
>
> (1) Remove another from the place where the other person is found[.]

{¶47} A review of the evidence presented at trial reflects that the evidence of Baker having committed both of the crimes at issue in the indictment was overwhelming. While he now suggests that he could not have legally kidnapped his own daughter from his own home, that argument lacks merit in light of the elements of the Kidnapping charge in Count 1.

{¶48} Moreover, Baker's assertion that his counsel should have defended the Kidnapping charge on the merits is legally inconsistent with Baker having put forth the affirmative defense of not guilty by reason of insanity, a defense which Baker still asserts was valid. "Because NGRI is an affirmative defense, * * * it functions to excuse *admitted conduct* that is otherwise illicit." *State v. Duran*, 2025-Ohio-

2165, ¶ 30 (2d Dist.) (emphasis *sic*). "'[A]n affirmative defense * * * is in the nature of a "confession and avoidance," in which the defendant admits the elements of the crime, but seeks to prove some additional fact that negates culpability.'" *Id.*, citing *State v. Bennett*, 2019-Ohio-2996, ¶ 26 (2d Dist.). *See also State v. Poole*, 33 Ohio St.2d 18, 19 (1973).

{¶49} Because Baker entered a NGRI plea and advanced that affirmative defense at trial, he necessarily admitted committing the crime of Kidnapping. It does not reason that he could now disavow that admission and argue for postconviction purposes that he really did not commit the offense and that his counsel was ineffective in not presenting evidence at trial in support of Baker's new claim of innocence.

{¶50} In sum, upon reviewing Baker's second postconviction claim in light of the record before us and the applicable legal authority, we find that the trial court did not abuse its discretion in denying that claim.

{¶51} Finally, Baker argues on appeal that the trial court erred by dismissing his petition for postconviction relief without holding a hearing.

{¶52} As noted above, "[t]he filing of a petition for postconviction relief does not automatically entitle the petitioner to an evidentiary hearing." *State v. Andrews*, 2011-Ohio-6106, ¶ 11 (3d Dist.), citing *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999). Pursuant to R.C. 2953.21(D), "[b]efore granting a hearing on a

petition filed under [R.C. 2953.21(A)], the court shall determine whether there are substantive grounds for relief."

{¶53} In the instant case, after reviewing the record, including the petition, supporting documentation, and the files and records in this case, we find that the trial court did not abuse its discretion by denying the petition without first holding an evidentiary hearing, as the claims were barred by res judicata and were facially untenable in light of the arguments and evidence submitted by Baker.

{¶54} For all of the reasons stated, the first and second assignments of error are overruled.

*Conclusion*

{¶55} Having found no error prejudicial to the defendant-appellant, Jonathan Baker, in the particulars assigned and argued, the January 13, 2026 judgment of the Seneca County Court of Common Pleas is affirmed.

***Judgment affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Juergen A. Waldick, Judge

Mark C. Miller, Judge

John R. Willamowski, Judge

DATED:
/jlm